Next here oral argument in the appeal of Roger Vendiklok v. United States Charles Kaiser Archery and grinding by John C. Connell on behalf of defendant Kaiser sorry for mispronouncing your name I do it for the record so it's clear in the transcript otherwise I get all sorts of variations Thank you for that I may reserve three minutes for There may be situations in which a government official's speech can give rise to a claim of unconstitutional retaliatory arrest and prosecution but in the circumstances presented here that being airport security no such right should be implied and certainly was not recognized as clearly established on January 26, 2013 What is it you're saying wasn't clearly established? In your briefing you seem to say that what wasn't clearly established was a private right of action under Bivens If that's your position what do we make of Supreme Court language that talks about the right being clearly established not causes of action, not specific claims but a right being established Well in Hartman the court clearly said the probable cause was a necessary element of retaliatory prosecution claim but it did not address whether or not there was a remedy under Bivens and whether Bivens extended to the First Amendment Sure but the right being spoken about is the right to free expression without government actors retaliating I guess the challenge here is there's a ladder of abstraction you seem to want to say no no you have to be perfectly concrete in talking about the cause of action there are some cases that I would like you to address that talk about this in terms of you have a right to be free of retaliation by government actors for the things that you say What's your response to that? Well in this particular case that again being airport security the court has never extended Bivens to that First Amendment protection the only case that existed at the time of this incident was a rending case in which the passenger asserted a First Amendment right and the court said no it doesn't apply here and in fact the court upheld the facial challenge to that regulation under the First Amendment What about a patent case? Patent goes back a good ways back to 1975 but we said that we believe the extension of the Bivens rule to violations of First Amendment rights to be both justifiable and logical in other words if you've got a First Amendment retaliation claim a problem a Bivens action will lie The problem with the patent case your honor is that it applied to only an unconstitutional interception by the government that's an entirely different situation than a retaliatory arrest and prosecution which is the case here Why is it entirely different? I just wanted to add in the wake of Hartman, Iqbal and Reichel both said that Bivens will not be extended to the First Amendment All I'm saying your honor is that under the law that existed at the time there was no notice to Mr. Kaiser that his conduct would have resulted in a First Amendment violation Are you saying that Hartman and Iqbal overruled Pat? I'm saying they certainly called it into question to the extent that they left the law unclear as to what the right was that was supposed to be clearly established under Hartman So you think that a reasonable TSA officer could operate under the impression that it's okay for him to get upset with what somebody says and therefore to retaliate, make something up to get back at him You're thinking that's something that a reasonable TSA officer could have thought was within the bounds of the law What I'm saying is That's just a straight up question What you're saying is it could have been, it was a foggy area so your assertion is a reasonable TSA officer could think I'm upset with that, I'm getting back at that person and I can do it because of what they said That was within the realm of a reasonable appreciation of what a TSA agent could do I will say that that right was not clearly established at the time of this incident, correct? Let me back you up I should have really raised this at the outset for clarity and it goes to the raising of qualified immunity here because we have the two claims in this case, right? The first amendment and the fourth claim My understanding of what you sought here was summary judgment as to the first amendment claim but I don't know that I saw you seeking that for the fourth amendment claim nor did the district court opinion address that What I want to do is simply clarify from both sides that there's no jurisdictional problem here with respect to our determination of both, that in fact we do have both before us Understood, and I think this was an issue that we did raise in our briefing before the court I think in response to a question if I recall I think our position about this is having raised the qualified immunity defense it would apply obviously to both claims of constitutional violations, first amendment and fourth amendment But interestingly, and I went back and re-raised the district court opinion there's never even a reference to the fourth amendment claim in that opinion it's all directed at the first amendment but in any event, following up then on Judge Jordan's questions assuming that Bivens does extend to a first amendment claim here What does a plaintiff in these circumstances need to do by way of sufficiently invoking his first amendment rights for purposes of then saying, well you retaliated against me for my having stated or done this because I understand the record here to be only that it is alleged that what Mr. Vanderklot said or requested was to be able to make some kind of complaint or report is that what the record shows? He did insist that he was going to make a report and he wanted to know how to do it I believe the videotape shows that some of his conduct at the scene was somewhat disrupted as well it was not disrupted perhaps to the extent in Rendon where they had to close down the line of the passengers coming through the security screening but that is what the record shows I do have a question if I might follow up I'm a little worried about jurisdiction here because I read the same things that the Chief Judge did read the section of your briefing below that begins on page 19 of docket item 69-2 talks all about the malicious prosecution claim under the fourth amendment must be dismissed with prejudice not a peep about qualified immunity how can we have jurisdiction to deal with an issue that wasn't discussed at all in the district court? Well as I said before I believe that impliedly it was a part of a qualified immunity argument generally that we asserted before the district court intending to be applied to both the first and fourth amendment claims I got you and we also made the argument in our papers as well that even if there was some argument for waiver we would call upon the courts discretion to exercise in judicial administration over this issue because it's important for the public to understand these issues I'm sure it's absolutely important the question is do we get to expand our jurisdiction because things are important? In the case of this sensitivity I would think that would be critically important Your Honor with all due respect Any further questions? Thank you very much Mr. Connell Mr. Aguilar on behalf of the United States arguing as amicus Thank you Your Honor just a minute please the court we're here arguing that the court should not extend a Bivens cause of action in this remedy under the second prong of the Wilkie v. Robbins test which is that there are significant special factors that counts against the recognition of a new kind of federal litigation Mr. Aguilar I got to say I was surprised to see an amicus brief about Bivens in the first amendment in the third circuit that didn't mention Patton or Milhouse where we said that Bivens will apply in a first amendment context Do you want to tell us why we shouldn't be paying attention to our own precedent in that regard? Sure, so we've noted that this court has said that Bivens applies in a first amendment retaliation context most recently in the Mack case We've noted that the Supreme Court has added some language cautioning that approach but obviously that's precedent that it binds this panel but that doesn't speak to the issue of whether or not Bivens applies in any and all contexts and as the Supreme Court explained in Wilkie when extending Bivens into a new context here, the screening area of an airport where TSA screening agents conduct that screening and then communicate any perceived potential threats to law enforcement officers that gets raised to The logic of Patton is and it's pretty clear it says Were there no cause of action for federal infringement of first amendment rights and a grieved individual could seek damages for violations of his first amendment rights by state officials citing section 1983 but not federal officials There is no reason to allow federal officials to act with impunity in this context and to bar state officials That's from page 870 of the Patton case In this instance nobody could come into court should Mr. Vanderklark have decided to sue the state officials that is the police officers and say Hey, wait a second under 1983 there's no cause of action Now maybe they'd have some 12B6 reason why it should fail but there would be a 1983 cause of action, right? Correct Okay So Patton says it doesn't make any sense to say the fellow with the uniform right here that's got the federal badge and the fellow with the state uniform on right here that's got the state badge should be treated differently There's no logic to that It's not fair There's no reason the cops should be on the hook and the federal agents shouldn't What is wrong with that reasoning from Patton? What has been said by any court since then to undermine that logic? Sure, so the Supreme Court has repeatedly said 1983 actions are a vehicle created by Congress to vindicate that right and impose personal damages on state officers If that statute did not exist a court would have to imply a cause of remedy and as the Supreme Court has said in the Malesko case I believe most recently implied causes of action under the Constitution are disfavored Now, Bivens represents the first time the Supreme Court decided to imply that cause of action but as it has cautioned repeatedly since then particularly in Wilkie the court should consider in the first instance whether to extend it into new context and here the special factors of the national security of the United States Let's get into that Mr. Aguilar because time is always limited and you've been permitted to argue as amicus and what is, I think, unique to your purview than the national security interests that are argued in your brief and I think the panel would like to hear from you with respect to what those interests are and why they ought to override some of the other jurisprudential concerns that have been argued and expressed Sure, so Congress created the TSA in the wake of the September 11th attacks specifically to preserve the national security and defense of the United States and it did that by creating TSA officers who are not law enforcement officers and who instead have a more specific and focused approach which is to screen all passengers and baggage that board commercial aircraft in the United States which is a tremendous volume approximately 2 million passengers 6 million pieces of baggage a day and their duty in doing that is to identify any potential threats or suspicious behavior in order to prevent that from getting on the aircraft as we know, on average, about 5 loaded firearms are found in carry-on baggage every day In fact, Mr. Kaiser, as a TSA agent would have been perfectly within his rights to call the Philadelphia police here had there been no verbal exchange whatsoever between Mr. van der Klook and him Particularly when it wasn't determined whether this device had any explosives with it and there was a great deal of suspicion about what this was Wait a minute I think you're making things more difficult for yourself Let's say after it was determined that there was no explosive involved in this device What we're arguing is that TSA agents generally have very broad latitudes to relay any concerns to police officers So will you answer my question? Wouldn't Mr. Kaiser have been perfectly within the realm of his responsibilities to have contacted the Philadelphia police even after it was determined this was not an explosive device but given its inherently suspicious nature? Sure As long as there are... You're asking a difficult question People test these systems all the time Exactly, Your Honor And that's why the political branches are best equipped to determine whether there should be a personal cause of action here at all because of the great national security interests The term, the concept, probable cause pops up within the briefing here and there and I'm wondering given the non-law enforcement nature of a TSA agent what threshold the law requires before an agent may, as Mr. Kaiser did here alert the police to conduct further investigation In fact, I shouldn't say further investigation to conduct some investigation because beyond screening itself he's also not an investigative officer Correct, Your Honor The threshold is quite low because TSA officials are not trained in reasonable suspicion and probable cause The point of the referral is when there is anything that is potentially disruptive, threatening, suspicious that they can make that referral Would the PVC pipe here be threatening and suspicious? I believe... To the point that they might call the police to look into it Again, particularly at the outset when it's undetermined what this is I agree that it's particularly suspicious My point is that we're not making an argument based on these facts We're making an argument much broader based on the duties that TSA agents have We're dealing with the specific facts before us Correct If I should get a job with TSA because I decide judicial salary is too low Don't leave yet, Judge Rogers And I find someone with a PVC pipe in his baggage with some electronic wires Am I justified in calling in the police to have them help me investigate this? So, if I may, I think that question probably goes to a not specific factual context Mr. Aguilar, recognize a softball when you see one I understand, but I'm just trying to make clear the broad scope of our argument here is that regardless of those facts any communications that are made in the security screening area from TSA agents to law enforcement officers need to be protected against the threat of personal damages liability because that can cause a communication So, your assertion is take the facts as pled as being true Okay? Sure That this was a complete fabrication You know, you take it out of this case You're uncomfortable working in this case Imagine a case in which a TSA agent says I don't like the look of that person or that person said something to me Better yet, I don't like the way that person spoke to me You know, I'm calling the cops and saying this guy just threatened 15 passengers to me He said I'm going to shoot people or I got a bomb There's nothing a TSA agent can say or do that puts him at risk because the TSA screening is so sensitive TSA agents really can act with impunity That seems to be what you're driving at So, if I can The Ninth Circuit had a similar allegation in their case, Mermetti v. United States where the plaintiffs alleged an intentional falsehood in immigration proceedings that resulted in the plaintiffs' reputational bond in detention for several years And so there, the Ninth Circuit had to determine Okay, what is the evidence context for this case? And we look at whether the repeatable I'm hearing yes Am I hearing yes? Yes Your position is there's not a thing that a TSA agent can do no matter how extraordinary or extreme that would contravene anybody's constitutional rights at a level where there would be a remedy So, obviously there are A remedy A personal damages remedy Any remedy So there are alternative remedies here That's what you should speak to, right? Because in this instance In this instance, the United States substituted itself for Mr. Kaiser for others And it took the state remedies off the table Didn't it? Yes Because he was acting within the scope Right So, there weren't state remedies And then the United States after it did that took the position that there's no federal tort claims remedy because he's not a law enforcement officer So it took that remedy off the table Right? So it took the state remedies off took the federal tort claims remedies off And then it says and there's no biddens remedy because TSA is so special and you can't extend it to that So it's trying to take that off the table So what's the remedy? Assume an outrageous TSA agent mind-bogglingly bad and retaliatory wicked man or woman So, you've taken all those things off the table What's the remedy? The remedy is within Congress's control So you're saying there's no remedy I'm saying that if there is to be a personal damages remedy here Congress is in the best position to create that in the first instance So you're saying there's no remedy Right? As of today for Mr. Vanderklok or for people like him there's no remedy That's your position If you're saying a personal damages remedy against a TSA employee for those kind of communications then you're saying that you cannot recover under biddings for that I'm not asking about biddings I've asked you for any other remedy You took the state remedies away You took the FTCA remedies away Now you're saying take the biddings remedy away In all these biddings cases it seems like the Supreme Court is careful to say Well, you won't get a biddings remedy but you've got this other thing going for you What can you point to? What other thing of any sort are you pointing to to say Well, that's the remedy and that's good enough So, by hand Wilkie differentiates the inquiry into remedy as distinct from the inquiry into whether there are special factors that counsel against the creation of a remedy So those are two distinct inquiries And although we pointed to as note these alternative remedies that's not our argument It really is based on special factors And at the end though I'm hearing you say from the United States perspective there's no remedy and that's okay because Congress if they wanted to they could make a remedy but as of now no remedy and that's okay That's the legal position the United States of America is presenting as amicus Correct? If Mr. Vanderclough wants to challenge the scope of whether or not defendant Kieser is acting within the Westpaw Act he can still do that on an eventual appeal from a final judgment there If he wants to challenge whether or not a TSA officer is a law enforcement officer for purposes of the FTCA claim he can still challenge that from a final appeal But you've already said those are off the table I mean, the United States position you're saying he can challenge those things but this is pretty simple I mean, you can own up to the position or you can say no, you're mistaken and tell me how I'm mistaken but it's pretty clear that your position is because the United States did this through the course of the litigation there's to be no state remedies because you substituted there's to be no FTCA remedies because that's a position you took and you persuaded the court and there is to be no Bivens remedy so you're saying there's no remedy and that's okay because if Congress wanted to give a remedy for the most outrageous behavior it could do it but short of that no remedy, right? Correct because Bivens Good enough I've got you The reason for that if I can just explain go ahead because I can understand why that is of some concern to the court is because as the 7th Circuit noted in Vance v. Rumsfeld the Bivens personal liability cause of action is a blunt instrument and particularly within the context of national security a simple Bivens action on a personal liability proponents of the evidence standard can sometimes result in erroneous outcomes and the politically accountable branches are in the best position to weigh the concerns of vindicating people's constitutional rights providing a personal damages remedy and securing the national security of the United States in a manner that is best attuned to  and that's why that decision ought to be left to Congress Thank you very much Mr. Aguilar Thank you, Your Honor Mr. Malone I plead the court Your Honor my name is Thomas Malone and I appear for Mr. Vanderklok repelling this case Not everybody goes to a TSA station with a PVC pipe      go into the details of that but I'm going to tell you a little bit about what the TSA does and what the TSA does So I'm going to  a little bit        does and what the TSA does and what the TSA does and what the TSA does and what the TSA does  the   and what the TSA does So here a plate bomb to the U.S. So we're with you. It was it doesn't seem in retrospect I'm sure Mr. VanderClough would agree, in retrospect, maybe not such a great plan. But he did what he did and that's not really where you're focused. Right? Correct. OK. You don't assert, do you, that that the TSA agents have to have probable cause before they call police officers. Do you? I I agree with the Chief Judge in that anybody in any situation can call a police. I mean, that is not a that is not a disputed I could right now say that you've asked me and walk out of this court. So that's not what's at issue in this case then as far as you're In terms of whether or not a person has the right to call the police, I agree that that is not an issue. TSA agent or not? Anybody has a right to call the police, I would submit and I would agree with the court. However, in this situation the impetus to calling police was the request after it was completely clear to everyone involved that what was being traveled with was a heart monitoring watch and power bars. Nothing dangerous. Nothing suspicious. Nothing at all that could be Well, wait a minute. Of course it's suspicious. Of course it's suspicious to a trained TSA agent. This may be someone who's trying to test the system. And for that reason, a TSA agent would be completely within the realm of his rightful responsibilities to summon law enforcement to conduct an investigation of some kind, or even a brief inquiry that the TSA agent himself was not authorized to do. Right. This is a new argument. One not made by the government in this case. But I agree with the court. So it's really the combination of summoning the police and, in addition to that, providing the police with allegedly false information about what was said. The impetus for the call in Mr. Vaynerchuk's position was to have him suffer. It was after they thought they had found something that was suspicious. Well, it was suspicious to them, and I agree. And we've said throughout this I'm sorry. It should have been. Yes, and I think we've said it in three or four or five different times throughout this proceeding that we have no problem and have never taken issue and we would not be standing here because of the enhanced let's look at the bag again, let's run it through the machine again, let's delay. He had no problem with that. I have to at this point, if you could give me two seconds to contradict something that counsel put on the record about the video and I'm sure your honors have not watched it yet and maybe you know where we've gone. We've read it. We've read about the cross-examination and that there wasn't arm waving. We know that you don't agree with that. There was no disturbance created at the airport whatsoever according to every witness who testified in this case in terms of the video itself and every piece of every deposition or evidence and police report in this case. There was not one moment where anything was disturbed at that airport checkpoint. Now, of course, the agent should be on alert. They should be looking at something like this in their training. It could be a pipe bomb. And they look, and that's what they did. He said, open it. It's just my running things. Open it. You can look inside. They did. It was a watch. And wires, there was a heart monitor piece of the watch that went around the person's torso, which sends your heart rate to the watch that you wear on your wrist. But that's all that was in there. And then the subsequent discussion about organic materials, Mr. Van der Klook was confused by. He said, you can look anywhere in my bag. It's just my running things. He's thinking of plants and vegetation and fruits, vegetables. Get to the heart of this, would you please, Mr. Mullen. The heart of it is where the chief judge was taking a minute ago. So it was a combination of this concern about the initial concern of the, sure looks like a pipe bomb, and then what you allege, Mr. Van der Klook alleges to be false statements, false statements, a made-up story. Go ahead and deal, if you would, directly with what you're hearing from your opponents, which is, look, this is a very significant, highly sensitive national security thing we're talking about. People get used to walking in the airport and they think it's no big deal, but everybody's safety depends on this. If we have over-deterrence because you make people liable if they have a run-in with somebody, then you won't get what you need, which is careful, diligent, thoughtful searching inquiry by TSA agents because they'll be worried that the next Mr. Van der Klook who comes through with something that looks like a pipe bomb will sue them. But that's what we're really dealing with here, right? I haven't said it as artfully as Mr. Aguilar, but that's what I understand the U.S. position to be is you've got to butt out of this because if you start meddling in it, you make everybody less safe. And if the price of that is that Mr. Van der Klook misses a half marathon and it goes to the expense of a criminal trial, that's more than unfortunate, but that's for Congress to deal with, not the court. That's what you need to speak to. The issue of the safety of the airports is one that should concern us all, and obviously the Congress addressed that by creating TSA and creating TSA agents and officers. That does not change the fact that an airport is a public place and that people, United States citizens, have rights in that public place. They still have every right that they woke up with before they walked into the airport. Once they submit themselves to that screening, which Mr. Van der Klook did, once you behave appropriately, which Mr. Van der Klook did, give permission to search, which Mr. Van der Klook did, it should have been over. If there was an enhanced, wait, what's he doing? Is he testing the system? We would not be standing here. That's not what happened. If this was not enhanced, let's look into this. Let's run it through the FBI system and see who he is. Let's make sure he's not just a 58-year-old architect with three kids who went to college, who works for Preet and has lived in Philadelphia since he moved here from Michigan with no incident with the law. Let's do all that. We wouldn't be standing here. The suit would have never been filed. What happened was something much more base, much more vital, and it really was nothing about airport security. The airport was secure the entire time he was there that day. The airport was secure after they put him in custody. It was secure because he had nothing dangerous, and it was secure because he behaved in an appropriate manner. What happened was Mr. Keyser got frustrated. Agent Keyser got frustrated with his desire to file a complaint against him. Now you're on the facts, which is great, but we're accepting your version of the facts for purposes of discussion and trying to get you to speak to the law. There's two legal things. There's the thing that Mr. Connell is saying on behalf of his client, which is, hey, this wasn't clearly established that a TSA agent couldn't call the police in and inform the police and let the police do an investigation, and Mr. Hagelauer's point that there's no remedy here. Congress hasn't made a remedy, and the court isn't allowed to extend bivens into this TSA screen area. Those are facts aside. Those are the things that I personally would very much like to have you address. I don't mean to take my colleagues' time, but I would like to hear yours. It's a little bit awkward to address it to you because I sat and listened to your questions of just questions. I know. I would incorporate your questions back because when I was sitting there, I was sitting with Judge Jordan saying what I was about to say because it is absurd on its face to suggest that a citizen who wants to fly has to surrender their First Amendment rights when they walk into the airport. It is absolutely patently absurd to say that and that 9-11 somehow created that. Well, there's plenty of Supreme Court decisions, and Mr. Hagelauer has cited them, where the Supreme Court says, you know, we've said bivens has gone this far and is going no further, so before it gets extended to new areas and to new circumstances and to new parties, Congress is going to have to say something because we're not. I take that to be the position that this is a new area. In 1975, as your Honor pointed out, patent was decided. In 1981, the Third Circuit, this Court, addressed and reaffirmed patent in Milton v. Carlson. Milhouse. I'm sorry, Milhouse v. Carlson. These are cases that are still precedent and are still binding precedent. There has never been a court to say, you know what? Airports are such special places that we don't want to have the First Amendment apply, that we don't want to have bivens apply. That case doesn't exist whether in the Third Circuit or in the Supreme Court. In fact, the District Court, is it undermined?  I'm hearing from your opponents that this is something that is particularly, or as they said it in that case, in the absence of an alternative, a bivens remedy is a subject of judgment. The federal courts must make the kind of remedial determination, et cetera, and then goes on to say you've got to watch out for these special circumstances. You can't be just spreading it out. They seem to be implying that later Supreme Court precedent cuts back on patent in Milhouse. Why are they wrong? They're wrong because there have been subsequent cases that address the TSA as well. So even in specific, no case addresses a TSA making up the othering of the word bomb, which is what we allege happened in this case. But there have been cases, including the George case, including the Toby case in the Fourth Circuit. There have been other cases in the context of the TSA where the right, the First Amendment rights and the bivens protections have extended. Well, in George, which was this court's case, we said we were assuming it applied. We didn't say we are finding it applied. We went out of our way in a footnote to say, you know, you can look at both sides of this and have a question, but for purposes of our discussion, we accepted for the discussion and assumed that it applied. That wasn't a finding, was it? That wasn't a holding. I appreciate and respect and give credence to the assumption that this court made because it's based on logic, it's based on common sense, and it's based on decency. I mean, there's not a situation, and it goes, I guess, to the issue as well, that they raised in terms of the clearly established right. The case law is clear that there does not have to be some prior precedent that addresses the exact factual situation that Mr. Vanderklark was in for there to be a clearly established right. Bivens is an exception to sovereign immunity, right? Correct. And the sovereign has now come and said that TSA is so vital, the situation is so sensitive, that we don't want to extend that exception to sovereign immunity to cover it. Now, don't we have to pay some attention to the sovereign when the sovereign says that? When the sovereign says it while continuing to employ a person, that the record, the video, and trial transcripts proves has perjured himself, I think we do have to start questioning whether we should listen to the sovereign when it comes to our constitutional and specifically our First Amendment rights. In this particular instance, Your Honor, there was a trial that took place where Agent Kieser testified that Mr. Vanderklark did things that the video clearly shows he did not do, and he's still working for the government. He's still dealing with passengers in the Philadelphia airport. Regardless of the proposed lie about the bomb, he said he was flailing his arms around. He said he was pointing in space, and the video shows this man walking through the airport at every moment, and he never did those things. That's something that if the court starts with the idea of, well, why do you bring a PVC pipe for? I would hope that there's some outrage about a TSA agent who still works for this sovereign government that comes in here and asks to put the First Amendment aside at an airport, It doesn't have to be an outrage. There's a pending lawsuit against him. Understood. That's why we're here. Understood, and I apologize for raising my voice, Your Honor. That's all right. But I do take umbrage at the idea that a sovereign at this point saying, it's been assumed at every level by every court, it's been assumed that Bivens extends to this scenario or this situation or this physical place to come in now when they're on the eve of trial, which is when this was filed, about a week before we were going to start picking a jury, and say airports are so special, 9-11 was such a, you know, and fall back on something like that to put Mr. Vanderclough in the situation that he's in now. I was going to raise the issue of the other remedies and how the government at every step of this way, of this case, has shut down those remedies for Mr. Vanderclough. This very trial court, Judge Packard did not cut me off, by the way, at all during the argument. He was the person, he was the judge who ruled upon the police officers and took them out of this case based on their probable cause, listening to the alleged lie. He's not a person who ate out of our hands, so to speak, throughout this proceeding. He listened to this case. He listened to these arguments, read the case law and everything that implied, stated, or seemed to say that the Bivens actions apply to TSA and certainly at airports. Look at Bivens itself. These are federal agents. Those DEA agents do something that is dangerous. They do carry guns. They do put themselves in harm's way. They knock down doors not knowing what's on the other side. We can sue them, but we can't sue a TSA agent. It doesn't make sense. If you make a mistake when you're knocking down a door, it doesn't mean that an airliner is going to drop out of the sky with a hole in the side, right? It could mean that a federal agent loses his life or her life. It would absolutely be a tragedy, but it wouldn't put hundreds and hundreds of people at risk of death, right? Understood. It's a different thing, and I think that's what the United States is pressing on us. It's different. Understood. And there has never been a finding that TSA agents or TSA officers cannot be in a Bivens litigation or be sued in a Bivens case. So I think that's important, too. I noticed that my time is up. I also noticed that Mr. Aguilar went over the combined time. So I would be happy to answer other questions. I just want to be mindful of the Court. Thank you. Thank you very much. Thank you, Your Honor. Mr. Cannell, rebuttal. Thank you, Judge. Mr. Cannell, Mr. Maloney indicates that Mr. Keeser is still employed in his usual capacity, is that correct? Yes. I'm a little surprised to hear counsel say that he now says anyone can call the police. I thought that that was what was being argued, and certainly that was what the district court did find. Well, you've got it, so run with it. What else do you have in order to go? But the fact of the matter is that loops back into this jurisdictional question, too, because we had originally opposed or sought dismissal of the most prosecution claim of the Fourth Amendment on the merits not under qualified immunity. Qualified immunity only came in because the district court said, well, wait a minute, doesn't the agent have to have probable cause? Well, if so, that's brand new law, and so then we need to question whether that was a clearly established right that the plaintiff can rely upon. But it only came up at oral argument and then subsequently in the judge's decision, so I would commend that to the court for the question of the jurisdictional issue. And I appreciate, Your Honors, sort of pressing the margins with a hypothetical of what ifs. You have just a real rogue agent. I would imagine if you had a rogue agent, that person would be working outside the scope of their duties. They would be operating outside the scope of their duties. The other side has not used the term rogue agent, nor has your opponent used the word liar, but that's effectively the result of what is being suggested. It's being suggested that Agent Keezer lied, that he made something up. And I would submit to Your Honor that the reason that the TSA took the position that he was still within the scope of his duties was because there was a proper finding of probable cause for the arrest and prosecution. As this court said in Pritchett, the finding of probable cause was based on the alleged lie. I mean, you can't run in that circle very comfortably, can you? I mean, you can't say there was probable cause, and what was the probable cause? It was the lie, so you can't look at the lie because there was probable cause. That's done awash. And that was exactly the position that the district court took, that it was solely based upon the false statement of Mr. Keezer. That's not so. What happened was there was a detective brought in to investigate. There were interviews of both the agent and the plaintiff. There was an inspection of his bags. There was a consultation with the prosecutor. There was, in other words, a third independent party. And the etiquette to it all was the report to the police, and that report and that call included the statement allegedly made by Mr. Van der Klok. That's right. And that one call does not initiate a criminal prosecution, nor does a single false statement is that sufficient alone to sustain a malicious prosecution claim, as this court said in the Pritchett case. In fact, Reschel, the U.S. Supreme Court, said it is not clearly established that an arrest with probable cause will give rise to a First Amendment violation. And that's exactly consistent with this court's ruling in the George case. Thank you very much, Mr. Connell. Thank you, Judge. Mr. Aguilar and Mr. Malone, a well-argued case, a very important and a very difficult case. We thank all of you. And with that said, we'll ask the clerk to adjourn the proceeding.